[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action seeks to prevent the application of the "student transfer rule" of the Connecticut Interscholastic Athletic Conference to a student transferring for financial reasons from private school to public school.
THE PLAINTIFF
The plaintiff is Mark Wajnowski, who brings the lawsuit on behalf of his minor son Nicholas Wajnowski, age sixteen. For his freshman and sophomore years of high school, Nicholas attended Notre Dame High School of West Haven, a private, parochial school. The school charges a yearly tuition of around $6000, in addition to requiring the student to pay for books, and for other assessments and fees.
Nicholas is one of four siblings, all of whom are teenagers attending school. Mark Wajnowski is the family breadwinner, working as an engineer for Connecticut Light Power, earning a gross annual income of $75,000. Mrs. Wajnowski is a homemaker with no outside salary. During the 1998-1999 school year, the family had three of the four children in parochial school: Nicholas and his older brother Daniel attended Notre Dame, their youngest sister attended Our Lady of Victory elementary school, and the other sister, after graduating from eighth grade at Our Lady of Victory in 1998, matriculated at West Haven High School as a freshman last year. The family received financial help from Mark Wajnowski's brother to pay the tuition costs at Notre Dame for Nicholas and Daniel.
As the family faced the 1999-2000 school year, they had difficult choices to make. Daniel had graduated and elected to go to Assumption College in Worcester, Massachusetts, a private college. He received a full tuition scholarship, and his grandparents and aunt had offered to pay for his other expenses. The youngest sister would enter the eighth grade at Our Lady of Victory, her final year there. Nicholas would be a junior at Notre Dame. But Nicholas's uncle who had paid the tuition for the Wajnowski boys in the past was now a father himself, and his CT Page 16308 child had been born with special medical and therapeutic needs.
The Wajnowski family chose not to ask for or accept any further financial help from Nicholas's uncle. They chose not to make a change for their youngest daughter. They chose not to invade a savings account of $6000 to make full or partial tuition payment for Nicholas, instead reserving the money for future college costs. And they chose not to accept an offer of tuition help for Nicholas's junior year directly from Notre Dame unless it came with a guarantee of a comparable scholarship for the 2000-2001 school year as well. Rather, they chose to withdraw Nicholas from Notre Dame and enroll him in West Haven High School.
THE DEFENDANT CIAC
Both Notre Dame High School and West Haven High School are members of the Connecticut Association of Schools, one component of which is the Connecticut Interscholastic Athletic Conference (CIAC), a private non-profit corporation organized to direct and control student athletics among secondary schools in Connecticut. It derives its funds from dues paid by member schools and from ticket sales and contest fees for the interscholastic tournaments that it sponsors.
The individual voting members of the CIAC are the principals of all the member schools, who volunteer their time to serve on the Boards and Committees that administer the organization. The CIAC also employs a paid staff, including an executive director and several assistant executive directors. Among the purposes of the CIAC are to develop intelligent recognition for the proper place of interscholastic athletics in education, to encourage good sportsmanship, to nurture more cordial relationships among member schools, and to foster equitable competition among schools. In order to achieve these purposes, the CIAC has certain rules regarding the eligibility of student athletes.
To be eligible to compete in an athletic contest in a CIAC-controlled sport, a student-athlete must, for example, maintain a certain minimum course load and achieve satisfactory academic progress toward eventual high school graduation. Also a student is ineligible to compete in any sport in which he competed at his old school for 365 days following that student's transfer from one school to another in grade 10, 11, or 12, unless the student simultaneously changes residence to the CT Page 16309 corresponding school district or school service area. CIAC Rules, Appendix B, Rule II C.
Both Mark Wajnowski and Nicholas Wajnowski were aware of this rule when the decision was made to withdraw Nicholas from Notre Dame and enroll him in West Haven High School.
The so-called transfer rule, utilized by interscholastic athletic conferences in many other states besides Connecticut, has certain exceptions that are not particularly controversial, such as an exception when the "sending school" ceases to operate as a school. Rule II C (7). But only in the last two years (1998-1999 and 1999-2000) has the rule in Connecticut had a "hardship" exception. The hardship exception states:
 Hardship — Eligibility may be granted to a transfer student who does not meet the CIAC Transfer Standard when sufficient evidence, as determined by the CIAC Eligibility Committee, is provided to show that it was necessary for the student to transfer because of unforeseen, unavoidable, or unusual circumstances including, but not limited to, broken home conditions, terminal or serious illness of parent of sibling, death of a parent or guardian, abandonment, loss of school accreditation, bankruptcy and/or loss of principal income of legal guardian(s), and provided the transfer was not for athletic reasons and there was no undue influence. Hardship is defined as an unforeseeable act, condition or event which may not reasonably and/or practically be avoided or corrected and which causes the imposition of a severe burden upon the student or his/her family. A hardship situation may be a situation which is unique to the student or his/her family which could not have been predicted, which does not apply to others in a similar setting, and over which the family has no control.
Rule II C (20).
While at Notre Dame, Nicholas had played on the varsity soccer team and the junior varsity basketball team. He will therefore be ineligible to compete in those sports at West Haven High until he begins his senior year, unless he is granted an exception. In August 1999, Nicholas applied for such an exception.
THE PLAINTIFF'S HARDSHIP APPLICATION CT Page 16310
The Wajnowski application for an exception to the transfer rule consisted of a letter from the principal of the new school, Ronald Stancil of West Haven High, who believed that the family [night qualify on account of financial hardship. Supporting documentation by the Wajnowski family was submitted, including a written breakdown of family income and expenses, and a lengthy letter of explanation from Mark Wajnowski about the family's circumstances.
Such an application for exception is first referred to the Eligibility Committee of the CIAC for consideration. CIAC By-Laws, Art. VIII, Sec. B.4. That committee examines the application and supporting documentation and is empowered to deny the application or to recommend favorable action. In the case of a recommendation to grant the exception or in the case of an appeal from a denial by the Eligibility Committee, the matter is referred to the Eligibility Review Committee for final action. Art. Viii, Sec. B.6. For an appeal from a denial, the circumstances of the student-athlete and his family are investigated by one of the CIAC staff who may interview individuals and collect further relevant documentation. The student athlete may appear before the committee with a parent, with witnesses, and even with an attorney or other spokesperson to present the case for an exception. The Review Committee then deliberates and votes.
The Wajnowski application was denied by the Eligibility Committee at its meeting on September 16, 1999. The matter was then taken up by the Eligibility Review Committee on September 28, 1999. Mark Wajnowski appeared with Attorney Michael Farrell and made an oral presentation to the review committee, highlighting certain of the documentation concerning the family's financial plight. Committee members asked questions to which the Mr. Wajnowski responded. The review committee also heard from Thomas Galvin, Assistant Executive Director of the CIAC who is charged by the committee with investigating hardship claims. Mr. Galvin had spoken in the interim to Brother James Brannigan, Headmaster of Notre Dame High School who confirmed that a scholarship offer had been made by Notre Dame prior to the formal transfer of Nicholas in whatever amount would be necessary to keep Nicholas as a student there for the 1999-2000 school year.
The Eligibility Review Committee denied the application for an exception to the transfer rule. The Committee, while not CT Page 16311 unsympathetic to the situation in which the family found itself, decided that, in the language of the rule, the situation was not one that the family was powerless to have "avoided or corrected." In their deliberations, the Committee considered the relatively substantial income of Mr. Wajnowski, notwithstanding the expenses the family incurred. The committee, among whom was a parochial school principal, acknowledged what in their experience had been the reluctance of parochial schools to let a student in the upper grades withdraw for lack of tuition funds without first offering a suitable tuition scholarship. The committee felt that the family had neither explored this option fully nor attempted to accept and work with Notre Dame's offer before deciding that a transfer to public school was the better option. The committee appreciated the reluctance of Mr. Wajnowski to accept continued financial help for Nicholas from his brother but was unable to conclude that this avenue had been foreclosed by the unforseen withdrawal of support by the donor, rather than the voluntary and foreseeable decision of Mr. Wajnowski not to ask for any more funds. Also the committee was unimpressed by the family's aversion to using supplemental income, such as that gained through modest part-time work or summer jobs, to ameliorate the shortage of tuition money.
When the Board of Control, the main governing body of the CIAC, declined to permit yet another hearing on the issue, Mark Wajnowski filed this lawsuit against the CIAC and its parent-affiliate the Connecticut Association of Schools, and against the West Haven Board of Education. He seeks an injunction prohibiting the application of the transfer rule to his son Nicholas and compelling West Haven High to allow Nicholas to play on its varsity basketball team, which had its first interscholastic game on December 16, 1999.[1] In his underlying complaint, the plaintiff alleges that, as to the CIAC, 1) it is the functional equivalent of a public agency, 2) the rule denying eligibility to transfer students is a violation of the rights of those students, and 3) the application of the rule to Nicholas in denying him the exception for hardship is a violation of his rights. The rights denied Nicholas, it is alleged, are the right to equal educational opportunity under the State Constitution, Article 8 Section 1; the right to equal protection of the law under the State Constitution, Article 1 Section 20; and the right to equal protection under the Fourteenth Amendment to the United States Constitution, the latter enforceable through42 U.S.C. § 1983.[2]
CT Page 16312
INJUNCTIVE RELIEF
To prevail on an application for temporary injunction, the plaintiff must demonstrate that he is likely to succeed on the merits; that there is no adequate remedy at law; that he will be irreparably harmed if relief is not granted; and that the balance of equities favors the relief requested. See, e.g., GriffinHospital v. Commission on Hospitals and Health Care,196 Conn. 451, 457-61 (1985). Because all parties have stipulated on the record in open court that they wish the court to treat the plaintiff's request as one for a permanent injunction as well, the court will instead confine its analysis solely to the question of whether the plaintiff has proved his case on the merits, that is whether he has succeeded in showing that the defendants have deprived him of any of his constitutional rights.
THE "STATE ACTION" REQUIREMENT
Proof of a deprivation of equal rights under the constitution involves the necessity to prove that the violation of which the plaintiff complains was the result of "state action," that is that some actual arm of government or one officially sanctioned by government acted to the plaintiff's detriment. Sheff v.O'Neill, 238 Conn. 1 (1996). That state action exists in this case is far from clear. The evidence is that the CAS and the CIAC are private, non-profit corporations. Membership is voluntary. Revenue is derived from membership dues and fees for services. The organizations are not state agencies and indeed there is no evidence that these defendants receive any funds directly from the state. Moreover, many of the member schools are not public schools but religious schools that undoubtedly receive no state revenue. The plaintiff's argument that, regardless of lack of state funding, the defendants CAS and CIAC are the functional
equivalent of a state agency, is largely unpersuasive in this context.[3]
Despite the dearth of evidence presented by the plaintiff on this point, the court is nonetheless aware that other courts in Connecticut and elsewhere have treated eligibility denials by such athletic conferences as constituting state action. Dennin v.CIAC, 913 F. Sup. 663, 671 (D. Conn. 1996), dismissed as moot,94 F.3d 96 (1996); Indiana High School Athletic Association v.Carlberg, 694 N.E.2d 222 (Ind. 1997). Because the plaintiff's proof fails under either scenario, the court will assume for the sake argument that the conduct of the defendants involves state CT Page 16313 action, although this court expressly does not so find.
THE RIGHT TO AN EDUCATION
The right to a free public elementary and secondary education is guaranteed by the Connecticut Constitution, Article VIII, § 1. But that provision does not guarantee the right of a student to participate in any or all courses or extra-curricular activities for which he may be eligible. Absent a legislative mandate such as that in Conn. Gen. Stat. § 10-76a that requires a special education curriculum for children with disabilities, a student has no constitutional right to any particular program of instruction. See, e.g., Broadley v. Boardof Education, 229 Conn. 1, 9 (1994). There is certainly no fundamental right to play varsity basketball, just as there is no fundamental right to take art class or to play in the school band. Accord, Steffes v. California Interscholastic Federation,222 Cal.Rptr. 355 (1986) (similar state constitutional provision interpreted). The plaintiff cannot prevail on this theory.
THE RIGHT TO EQUAL PROTECTION
The next question, then, is whether the transfer rule violates the federal and state constitutions by treating the plaintiff as a transfer student in a different way compared to other student athletes. The equal protection provisions of the United States Constitution and of the Connecticut Constitution[4] require "the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 377 U.S. 533,84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Franklin v. Berger,211 Conn. 591, 594 (1989). A regulation that creates discrete classes of persons will be subjected to strict scrutiny if it infringes on a fundamental right or establishes a suspect classification. Having failed to establish that participation in the interscholastic basketball program is a fundamental right, the plaintiff argues that his status as a transfer student places him in a suspect classification under the regulation. However, he provides no analysis of why a classification of "transfer student" should be considered suspect when, for example, a classification of "intellectually gifted student" is not. See Broadley, 8-9, supra. In fact, heightened judicial scrutiny is usually afforded only to classifications that are "presumptively invidious" such as alienage, race, or national origin. Barannikova v. Greenwich,229 Conn. 664, 675-76 (1994). CT Page 16314
Rather, where the rule being challenged neither trammels fundamental rights nor burdens an inherently suspect class, the sole question is whether the regulation bears a rational relationship to a legitimate state interest. See, FederalCommunications Commission v. Beach Communications, Inc.,508 U.S. 307, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993); Parham v.Hughes, 441 U.S. 347, 351-352 (1979); State v. Reed,192 Conn. 520, 533 (1984). "As long as the disparate treatment is, as here, rationally based, we may not judge the wisdom, desirability or logic of the legislative determination." Heller v. Doe,509 U.S. 312, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); Broadley v.Board of Education, supra, 9.
The defendant has developed well-articulated goals in its role as the governing body of interscholastic high school sports. The CIAC has a long-standing history of attempting to promote good sportsmanship, fair competition, and cordial relations among its member schools. It has determined that there are problems with unrestricted eligibility of student athletes who transfer between member schools. Among these problems is the danger of the recruitment or coercion of an athlete or family to transfer schools to the detriment of the student's academic or social development. In response, the CIAC, its individual membership composed of the principals and administrators of the very schools it regulates, has enacted the transfer rule.
The rule restricting eligibility of transfer students bears a rational relationship to the general goals of the organization and to the specific concerns about recruitment. The transfer rule is a common means of accomplishing these goals. Cursory research yields at least nine other states in which legal challenges to just such a rule have been unsuccessful.[5]
The plaintiff, however, claims that the regulation is over-inclusive, essentially arguing that a blanket rule against transferring-without-moving ought not to exist but rather that the CIAC aught to be obligated to undertake an individualized review of every such transfer, or at least of every such transfer in which the student claims he is not being recruited. But the "over-inclusive" claim in equal protection law is only available in cases involving strict scrutiny and is not applicable in a case such as this evaluated along "rational basis" lines. Hughesv. Alexandria Scrap Corp. , 426 U.S. 794, 813, 96 S.Ct. 2488,2499, 49 L.Ed.2d 220 (1976); Parham v. Hughes, supra, at U.S. CT Page 16315 358.
Moreover an entire system of individualized review contains the danger of which the plaintiff also complains — that of apparent arbitrariness — not to mention the pitfall of impracticality. As the Supreme Court has stated relative to other such challenges, a classification does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Dandridge v. Williams, 397 U.S. 471, 485,90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Rather the court must limit its inquiry to whether the challenged regulation bears "some rational relationship to a legitimate state interest." State v.Reed, supra, 531. The transfer rule manifestly does so.
The plaintiff finally urges the court to find that the defendant has applied the regulation in an arbitrary and capricious manner, thus denying him due process and the equal protection of the law. In support of this proposition, the plaintiff offers evidence that despite requests by seven student athletes for hardship exceptions to the transfer rule in the last eighteen months, not one has been granted so far. But this evidence tends to support just the opposite conclusion. Rather than show that the CIAC acts in an arbitrary and capricious manner in applying the rules, it shows that the CIAC is surprisingly consistent in handling such applications. Indeed, the review committee's interpretation of the hardship rule could be characterized as uniformly strict. There is simply no evidence that the Eligibility Committee, the Eligibility Review Committee, and the Board of Control were other than conscientious and properly deliberative in arriving at their determinations.
The plaintiff has failed to prove any constitutional or statutory violation in this case. Accordingly, the plaintiff is not entitled to an injunction against the defendants in this action. The parties having agreed that the application be treated as one for both temporary and permanent injunctive relief, the application is denied and judgment shall enter for the defendants.
Pittman, J.